UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAE A. SAELEE,,<br><br>                  Petitioner,<br><br>     v.<br><br>PAMELA BONDI, ET AL,<br><br>                  Respondents. | Case No. 2:25-cv-02677-TLF<br><br>ORDER GRANTING WRIT OF HABEAS CORPUS |

Petitioner Kae A. Saelee is a 54-year-old noncitizen from Laos detained U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1, Petition. He has been detained since on or about October 31, 2025. *Id*. He entered the United States in 1988 as a refugee with Lawful Permanent Resident status and has lived in the United States for over 27 years. *Id*.; Dkt. 6, Return Memorandum, at 3.

Petitioner was issued a final removal order on or about August 13, 1997. *Id*.; Dkt, 11, Declaration of Deportation Officer Wiley Brown ("Brown Decl.") ¶ 5. Because Laos did not accept deportees from the United States, he was placed on an Order of

ORDER GRANTING WRIT OF HABEAS CORPUS
- 1

1  Supervision ("OSUP"), under which has lived in the community for more than a decade.

2  *Id*.[1]

3      On December 23, 2025, petitioner, through counsel, petitioned for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. Petitioner argues: (1) ICE revoked his Order of Supervision in violation of its own regulations, including 8 C.F.R. §§ 241.4(l) and 241.13(i)(3); (2) his continued detention violates 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), because the statutory removal period expired decades ago and currently there is no reason to believe removal to Laos is reasonably foreseeable; and (3) his detention violates the Due Process Clause of the Fifth Amendment because, even if ICE had followed its own procedures, the procedures would be constitutionally inadequate and because the detention is not reasonably related to a legitimate governmental purpose. Dkt. 1; Dkt. 11 at 7, Reply.

    The government contends that ICE complied with its regulations by informing petitioner that his OSUP was revoked at the time of arrest and that ICE determined there was a significant likelihood of removal because Laos was allegedly reviewing his case for issuance of a travel document. Dkt. 6. The government also argues petitioner is subject to the statutory framework of 8 U.S.C. § 1231(a)(6) because, in 1994, he was allegedly "convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." *Id*. at 5; Dkt. 8, Vogel Decl., Ex. C, Order to Show Cause and Notice of Hearing. The government also argues that its regulations provide

---

[1] Petitioner states he has been on an Order of Supervision for 28 years, but the only OSUP provided is dated Jun 16, 2011. Dkt. 1 at 2; Dkt. 8, Declaration of Kristen R. Vogel (Vogel Decl.), Ex. D, Order of Supervision.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 2

adequate constitutional Due Process and thus no additional hearing is required. Dkt. 15, Response to Petitioner's Supplemental Brief.

The parties unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 5.

Petitioner seeks an order: (1) immediately releasing petitioner from custody under conditions of his prior OSUP; (2) prohibiting re-detention absent an executable travel document; and (3) requiring adequate notice and an opportunity to be heard at a meaningful time, before any future deprivation of liberty. After considering the parties' filings and the record, the Court GRANTS the petition in part (Dkt. 1). The government is ordered to release the petitioner from custody within 24 hours of this Order, pursuant to the conditions of his previous release and petitioner may not be re-detained until after a pre-deprivation hearing is held to determine whether detention is appropriate.[2]

## I.   Background

Petitioner entered the United States as a refugee from Laos. Dkt. 7, Wiley Decl. ¶ 4. His status was never adjusted to U.S. citizenship. *Id*. Although he was ordered removed on or about August 13, 1997, ICE placed him on an Order of Supervision on June 16, 2011, because it could not effectuate removal within the statutory period. Dkt. 6 at 4.

---

[2] Petitioner also asks the Court to issue an order preventing the government from once again taking petitioner into custody unless they have executable travel documents but ordering an executable travel document from another nation that has not yet been identified with any evidence as having a likelihood of issuing such a document is not within this Court's jurisdiction for a 28 U.S.C. § 2241 habeas petition.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 3

At a mid-October 2025 ICE check-in, Mr. Saelee was told to return in six months. Dkt. 1 at 4. On October 9, 2025, over fourteen years after issuance of the OSUP, Office of Enforcement and Removal Operations ("ERO") Portland requested petitioner's file to complete a travel document request. Dkt. 6 at 4. This was not disclosed to petitioner during his October check-in. *See generally* Dkt. 1.

On or about November 1, 2025, ICE arrested Mr. Saelee at his home. Dkt. 1; Dkt. 7, Wiley Decl. ¶ 8. His file was not received at NWIPC until November 3, 2025, and was not forwarded to a Detention and Deportation Officer to submit the request and coordinate travel until December 7, 2025. Dkt. 7, Wiley Decl. ¶ 13.

Petitioner asserts that Laos does not have a formal repatriation agreement with the United States, and although Laos has permitted repatriation in a few isolated cases, there is no reason to believe it will issue travel documents for him. Dkt. 1 at 4. The government, by contrast, asserts "there is now a significant likelihood" of petitioner's removal in the reasonably foreseeable future. Dkt. 6 at 1.

## Discussion

Federal courts have authority to grant a writ of habeas corpus to an individual in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

The Framers of the U.S. Constitution considered the writ of habeas corpus to be so critical to the protection of individual liberty that they identified specific and limited grounds for suspension of the writ. *Boumediene v. Bush*, 553 U.S. 723, 743 (2008). The

writ of habeas corpus "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Id*. at 745.

The Court has power to conduct meaningful review of the cause for detention and the executive's power to detain, and to issue an equitable remedy under the writ of habeas corpus that includes release of the prisoner, and the means to correct errors in the government's process. *Id*. at 779-787. "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its preeminent role is recognized by the admonition in the Constitution that: 'the Privilege of the Writ of Habeas Corpus shall not be suspended. . .' U.S. Const., Art. 1, § 9, cl. 2. "The scope and flexibility of the writ — its capacity to reach all manner of illegal detention — its ability to cut through barriers of form and procedural mazes — have always been emphasized and jealously guarded by courts and lawmakers." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Id.*

**A. Jurisdiction**

The Court has subject matter jurisdiction to determine whether ICE complied with its own regulations and whether petitioner's detention violates the Constitution. At any time, the Court may raise the issue of its own jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). Although 8 U.S.C. § 1252(g) limits jurisdiction over challenges to the execution of removal orders, petitioner does not seek to enjoin or challenge removal itself. Rather,

ORDER GRANTING WRIT OF HABEAS CORPUS
- 5

he challenges the lawfulness of his detention following revocation of an Order of Supervision. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 150 (W.D.N.Y. 2025) (discussing and distinguishing from *Singh v. Napolitano*, 500 F. App'x 50 (2d Cir. 2012) and *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020)).

**B. Statutory Framework**

ICE's authority to detain noncitizens under a final order of removal arises under 8 U.S.C. § 1231. The statute contemplates a 90-day removal period. 8 U.S.C. § 1231(a)(1).

Once removal is no longer reasonably foreseeable, continued detention is not authorized. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of petitioner's release is governed by 8 C.F.R. § 241.13(i), which specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4); 8 C.F.R. § 241.13(b)(1)

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. *See Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025). The government make revoke the release of a noncitizen "who violates any of the conditions of release may be returned to custody." 8 C.F.R. § 214.13(i)(1). The parties agree this provision does not apply because there is no allegation petitioner

violated the conditions of release. Dkt. 16, Petitioner's Supplemental Reply Brief, at 16; Dkt. 6 at 5; Dkt. 11 at 1-2.

Under the applicable provision, the government "may revoke an alien's release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 214.13(i)(2). Under 8 C.F.R. § 241.13(i)(2), if the government has not determined, on account of changed circumstances, that a noncitizen may be removed in the reasonably foreseeable future, then a noncitizen may not be returned to custody. *Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *3 (W.D. Wash. Dec. 16, 2025). Even where revocation is permissible, ICE must provide notice and an opportunity to be heard, including evaluation of contested facts and a determination of whether revocation is warranted. 8 C.F.R. § 241.13(i)(3). ICE's discretion is therefore narrowly constrained.

The Notice of Revocation issued to petitioner states only that "there are changed circumstances" and that his case was under review by Laos for issuance of a travel document. Dkt. 8, Vogel Decl., Exhibit A, Notice of Revocation and Release. The notice contains no explanation of what the changed circumstances were, and the proof of service lacks a named officer and contains only the number "2816" and an illegible signature. *Id*.

The government asserts an "informal interview" was conducted, but the record shows there has not been compliance with 8 C.F.R. § 241.13(i)(3); there is no record of petitioner's response, and the section for his oral statement is blank. *Id*., Exhibit B, Alien Informal Interview. Even if petitioner was interviewed, this would not be consistent with

ORDER GRANTING WRIT OF HABEAS CORPUS
- 7

due process because there was not an opportunity to be heard in a meaningful time or manner. Petitioner was arrested and interviewed within hours, could not submit a written statement, and was afforded no meaningful opportunity to contest ICE's assertions.

In its supplemental response, the government admits that it did not provide adequate notice for his revocation as required by the regulations. Dkt. 15 at 4-5 ("the government agrees that the notice of revocation he received provided him with incorrect information and thus insufficient notice of the reason for his revocation as required by 8 CFR § 241.13(i)(3)."). The revocation therefore violated ICE's own regulations.

The government's declarations contradict the information stated in the revocation notice. On or about November 1, 2025, ICE arrested petitioner. The notice states that Laos was reviewing petitioner's case as of November 1, 2025, and yet Officer Brown declares that petitioner's information was not forwarded to a Detention and Deportation Officer until December 7, 2025. Dkt. 7, Brown Decl. ¶ 3. The government does not proffer any evidence that Laos will accept petitioner and states, without any evidence, "there has been a shift in cooperation for most countries towards assisting with repatriation of their citizen's." Dkt. 7, Wiley Decl. ¶ 11. The government states an upcoming removal flight to Laos is available, "which Petitioner could make" and an additional upcoming removal flight to Laos which "Petitioner appears to be eligible for." *Id*. ¶ 14.

The government does not argue that petitioner violated any condition of supervision. Dkt. 6 at 5. Nor does it identify any evidence of changed circumstances that would show significant likelihood that Laos would accept petitioner in the reasonably foreseeable future, sufficient to satisfy 8 C.F.R. § 241.13(i)(2).

**C. Due Process Analysis**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const.. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Due process thus guarantees notice and an individualized hearing before a neutral decisionmaker to assess danger or flight risk *before* the revocation of an individual's release. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time in a meaningful manner." (citation omitted); *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972) (requiring a "preliminary hearing to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed . . . a violation of parole conditions" and that such determination be made "by someone not directly involved in the case[.]") (citation omitted)); *see also Vitek v. Jones*, 445 U.S. 480 (1980) (applying *Morrissey* to civil commitments).

Determining whether a particular administrative procedure satisfies due process "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional

or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21. (W.D. Wash. 2025)

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). Courts in this District have repeatedly held that due process requires a hearing before the government revokes a person's liberty, particularly where the individual has lived in the community under some supervision. *E.A. T.-B. v. Wamsley*, 795 F. Supp. at 1321-22, n. 4; *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *7-9 (W.D. Wash. Oct. 7, 2025); *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2-4 (W.D. Wash. Sept. 17, 2025); *Y.M.M. v. Wamsley*, No. 2:25-CV-02075-TMC, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025); *P.T. v. Hermosillo*, No. C25- 2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 26, 2025); *Francois v. Wamsley*, No. 2:25-cv-02122-RSM-GJL, 2025 WL 3496557, at *4 (W.D. Wash. Dec. 5, 2025); *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *2-5 (W.D. Wash. Sept. 12, 2025).

The Court will consider each *Mathews* factor in turn to determine whether petitioner's arrest and detention comport with constitutional due process requirements, and what would be required for adequate due process protections.

1. **Private Interest**

Under the first *Mathews* factor, the Court determines the private interest to be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). A released individual had an "opportunity 'to form the [ ] enduring attachments of normal life'" and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Morrissey* at 408 U.S. at 482.

The government's argument that petitioner should have expected re-detention because he remained subject to a final removal order is unpersuasive. Dkt. 15 at 9. When petitioner was released from ICE custody in 2011 on an Order of Supervision, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez,* 2025 WL 2637663, at *3. The fact the government allowed petitioner to remain in the community for over 11 years after issuing an Order of Supervision and 28 years since the final order of removal was issued only strengthens this interest. *Tran v. Bondi*, 2025 WL 3725677, at *11 (citing *Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025)). Therefore, the first *Mathews* factor weighs in petitioner's favor.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor examines both the risk of erroneous deprivation under existing procedures and the probable value of additional safeguards. *Mathews,* 24 U.S. at 335. The risk of erroneous deprivation here is substantial. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions. ICE began no concrete steps toward removal until after revoking supervision.

The government states "[t]here is no basis in law for imposing yet more procedures that neither Congress nor the relevant agencies have adopted." Dkt. 15, at 4-5. But even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process. *See, e.g.*, *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

The government admits it did not provide the requisite notice under its own regulations but argues "this error alone does not demonstrate that the regulations their face are constitutionally deficient or that petitioner is required to more process that what is provided in the current regulations." *Id.* at 5. Yet, because the government did not follow its own regulations the probable value of additional or substitute procedural safeguards is high, as it is undeniable that the risk of an erroneous deprivation would decrease if petitioner had received meaningful notice, at a meaningful time, of the

specific basis for his re-detention and a meaningful opportunity to be heard before a neutral decisionmaker.

The government also makes the argument that, because petitioner is subject to a final order of removal and "because he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct," he is properly detained under 8 U.S. § 1231(a). Dkt. 6. at 5.[3] Even if the government believes it has a lawful basis for detention, that belief "does not eliminate [its] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp at 1322. The Court holds that detaining petitioner on November 1, 2025, with insufficient notice and no meaningful opportunity to be heard has created a significant risk of an erroneous deprivation of petitioner's liberty interest. The second *Mathews* factor weighs in petitioner's favor.

**3. Government's Interest**

The third *Mathews* factor evaluates the government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements.

The government has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal and in protecting the community from danger. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But those interests are already contemplated and adequately protected by the narrow authority to

---

[3] Because the Court finds that petitioner's detention violates the Due Process Clause, and thus affords relief on that basis, it does not reach petitioner's claims under 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Even so, the Court notes the government has not provided petitioner sufficient process or notice to justify a detention on the basis of 8 U.S.C. § 1231(a)(6).

ORDER GRANTING WRIT OF HABEAS CORPUS
- 13

revoke release set forth in in 8 C.F.R. § 241.13(i)(2). *Tran v. Bondi*, 2025 WL 3725677, at *13.

The government also argues sufficient process is provided as 8 C.F.R. § 241.13(i)(3) allows a noncitizen the opportunity to respond to a revocation decision by participating in an informal interview to present evidence challenging the basis for revocation and point to other post-detention procedures under 8 C.F.R. § 241.4. But an informal interview is amorphous, because 8 C.F.R. § 241.13(i)(3) provides no language to describe any particular process. The regulation is silent about the time frame for providing notice, how the notice must be served on the person whose detention is sought, how the grounds that would be proper for detention will be identified in the notice, whether the informal interview is an opportunity to be heard by a neutral decision-maker, how the interview and the decision of the neutral hearing officer will be documented, or which party bears the burden of proof. The regulation risks authorizing precisely the type of arbitrary deprivation of liberty the Due Process Clause forbids.

In the analogous context of parole revocation, the Supreme Court made clear that due process requires more: prompt notice, adequate time to prepare, a neutral and detached decisionmaker, and placement of the burden on the government. *Morrissey,* 408 U.S. at 485-89. If, instead of the "informal interview" language of 8 C.F.R. § 241.13(i)(3), the regulation included language to incorporate the requirements the Court identified in *Morrissey*, then the process followed by the agency would align the regulation with due process requirements. But neither the language of the regulation, nor the actual practice of the agency, provided the required procedure.

Had the government provided meaningful pre-deprivation process, petitioner could have received sufficient notice to secure counsel (or prepare to represent himself) and to gather evidence to rebut the government's claim of "changed circumstances" after being accurately informed of what those circumstances allegedly were. He could have, as petitioner notes, investigated whether any new Memorandum of Understanding with Laos existed, examined ICE's internal practices concerning travel document issuance for Laotian nationals, and submitted Freedom of Information Act requests bearing directly on the likelihood of removal, all while remaining at liberty. Dkt. 16 at 6. Instead, the cursory informal interview afforded to him occurred only after his arrest, provided no meaningful opportunity to prepare, was conducted by a non-neutral decisionmaker, and effectively shifted the burden to petitioner to disprove the government's speculative assertion that removal was likely.

Nor can the other post-deprivation review mechanisms in 8 C.F.R. § 241.4 cure these defects. Post-deprivation procedures cannot serve as an adequate safeguard where the government lacked authority to revoke release in the first place. *E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *6 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

Accordingly, the Court holds that the government's interest in re-detaining a noncitizen, who has not violated the terms of their release nor whose removal has not been established to be likely to occur in the reasonably foreseeable future, without a pre-detention hearing or some other pre-detention process is low. *See Wamsley*, 2025

ORDER GRANTING WRIT OF HABEAS CORPUS
- 15

WL 2402130, at *5 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). While a pre-detention process would impose some administrative burden, that burden is minimal when weighed against the fundamental liberty interest at stake and the high risk of erroneous deprivation. Providing effectively no pre-deprivation process, as ICE did here, is constitutionally insufficient.

### III. Conclusion

Petitioner's re-detention occurred without meaningful notice, without a meaningful opportunity to be heard, and without evidence of relevant changed circumstances under the agency's regulation, that would allow for revocation of his Order of Supervision. This violated ICE's regulations and the Due Process Clause of the Fifth Amendment. Petitioner is therefore in custody in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c). Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part. It is ORDERED:

1. The government shall release petitioner from custody within 24 hours of the filing of this Order, under the conditions of his August 13, 2011 OSUP;
2. Prior to any future detention by ICE, petitioner is entitled to notice and a pre-deprivation hearing at which a neutral decision-maker must determine whether there is any valid basis for their detention—i.e., whether he poses a danger to the community or a flight risk that can only be mitigated through detention. At such a hearing, the government bears the burden of establishing by clear and convincing evidence that a valid basis exists for his detention. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) ("the government must

   prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond."); *Pablo Sequen v. Albarran,* No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025);

3. The evidence the government presented in this case is insufficient to meet the requirements of 8 C.F.R. §§ 241.13(i)(2); and

4. No later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the government shall file the declaration on Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed the following Monday) the government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

IT IS SO ORDERED.

Dated this 28th day of January, 2026.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING WRIT OF HABEAS CORPUS - 17